PEARSON, MJ.

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JEROME CARTER, | ) | CASE NO. 1:07CV3125 |
|  | ) |  |
| Petitioner, | ) |  |
|  | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) |  |
|  | ) | MAGISTRATE JUDGE |
| STUART HUDSON, | ) | BENITA Y. PEARSON |
| WARDEN, | ) |  |
|  | ) |  |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

This Report and Recommendation is written in response to a *pro se* petition submitted by Jerome Carter ("Carter") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Carter is incarcerated at Mansfield Correctional Facility in Mansfield, Ohio serving a life sentence without the possibility of parole, imposed following his 2005 convictions on numerous charges including: aggravated murder with a gun specification; aggravated robbery with a gun specification; two counts kidnaping; and one count arson.

In his federal habeas petition, Carter raises three Grounds for Relief.  Respondent contends that Grounds One and Three should be denied because the State court of appeals' adjudication was not contrary to nor an unreasonable application of clearly established federal law; and that Ground Two should be denied because it is not an issue cognizable under § 2254.

For the reasons that follow, the undersigned recommends that Grounds One, Two, and Three be dismissed and that the entire petition be denied in its entirety.

( 1:07CV3125)

## I.  Factual and Procedural Background

### A.  Facts of the Underlying Offense, Disposition of Charges, and Sentencing

The State appellate court's factual findings shall be presumed correct; petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Brumley v. Wingard*, 269 F. 3d 629, 637 (6th Cir. 2001).  The Stark County Court of Appeals, Eighth Appellate District, (also "State court of appeals"), found the facts of the underlying offenses and trial to be as follows:

> On November 6, 2004, the day before Karamas' body was found, he and his father, Louis Karamas Sr., spent the afternoon together.  The two washed and waxed Karamas Jr.'s new car and installed special rims on the tires.  Karamas' father stated that his son had purchased the 1996 dark green Buick three or four days prior.  After working with his father, Karamas went out and returned home at around 1:30 a.m. At approximately 2:00 a.m., Karamas received a phone call and decided to go back out. That was the last time the family saw him alive.

> That same evening, Carter and co-defendant Richard Glenn ("Glenn") were at the Harry Buffalo in Akron, Ohio.  Glenn stated that he rode to the bar with Carter, who drive a grey Ford Taurus with Georgia plates.  Co-defendant Joseph Gray ("Gray") was also at the Harry Buffalo and the trio had a conversation regarding a previous altercation between Gray and Carter.  When the bar closed at 2:30 a.m., Carter and Glenn went to the Spring Hill apartments to visit a friend.  Gray, who also lived the complex, met up with Carter and Glenn in the lobby.  While in the lobby, Gray told Carter and Glenn that he had seen Karamas' new rims and wanted to rob Karamas of them.  Karamas knew all three individuals from either work or social encounters.

> At the request of Gray, Karamas arrived at the Spring Hill apartments in his new car. From that point, Karamas and Gray drove in Karamas' car and Carter and Glenn drove in Carter's car.  The group drove around for a while before ending up at the intersection of Archwood and Inman at the home of a stripper.  When they arrived at 3:30 a.m., no one was at the house.  Karamas and Gray exited Karamas' car and stood by Carter's passenger side door.  Glenn stated that Carter had a fake conversation on his cellular phone to throw Karamas off.  Gray and Karamas walked back to the Karamas' vehicle and got inside. The pair then exited the vehicle, looked in the trunk, and then got back into the car.  After Gray and Karamas re-entered the car, Glenn heard Karamas saying 'please don't do this, c'mon, you ain't got to do

2

( 1:07CV3125)

this.'  Gray then began hitting Karamas with a handgun and threatened to shoot him if he didn't get into the trunk.  At that point, Glenn attempted to exit the car, but Carter prevented him. Gray got Karamas into the trunk of his own car but could not shut the trunk.

Carter told him to slam it harder and Gray was able to close the trunk. Gray then got into the driver's seat of Karamas's vehicle.  Carter stated that they were going to take Karamas to Cleveland and let him go because Karamas did not know anyone there.

Carter led the way out of Akron, stopping for gas along the way. Carter drove the caravan through the Garden Valley projects on East 79th and Kinsman but stated that the location was 'too hot.'  Carter continued to East 83rd and Rawlings where he stopped the car.  Carter got out of his car and walked over to Gray, who popped the trunk of Karamas' vehicle.  While walking back to the back of Karamas' car, Carter told Glenn to get out of the vehicle.  Glenn complied and when he reached Karamas' driver side door, he heard several gunshots in rapid succession.  Glenn stated that both Carter and Gray were standing behind the trunk when the gunshots were fired.

Glenn reported that he saw Carter with a handgun and admitted that he had seen the gun on Carter before.  Carter then told Gray and Glenn to help him get Karamas out of the trunk.  Glenn stayed put while Gray pulled Karamas out of the trunk.  Glenn stated that he observed Karamas crawling and moaning on the ground and then witnessed Gray hit Karamas on the head with a hammer retrieved from the trunk of the car.  Glenn stated that Karamas did not move after that.

Gray dropped the hammer on the ground but Carter yelled for him to pick it up. Carter then told Gray to follow him in Karamas' car.  Carter got into his car and began to drive away. As he did so, Carter stated, 'I can't believe the [expletive omitted] was still breathing after I unloaded the clip.'  Carter further stated that he shot Karamas because 'he knew you all.'

Carter drove to Jermel Moses' ("Moses") house on East 144th and Kinsman.  Moses stated that Carter was an old friend of his and described Carter as the brother he never had.  Moses stated that in the early morning hours of November 7, 2004, Carter knocked on his door and told him to look in his backyard.  Moses complied and saw a green Buick with rims parked behind a Ford Taurus.  Carter told Moses that the car was stolen and that he was there to take the rims off of the vehicle.  Carter told Moses everything that had happened and stated that he was the one who shot Karamas.  Gray also told Moses that he was the one who shot Karamas but Moses stated he did not believe Gray, as he was known for embellishing.

The parties recovered the special key needed to remove the tires.  While doing so,

3

( 1:07CV3125)

Carter told Gray to clean the blood off of the hammer.  Once the rims were off of the car, Carter took two rims with him and left two on the porch of Moses' house.  Gray then backed Karamas' vehicle out of the driveway and began driving away.  However, after moving only a few feet, one of the tires fell off of the vehicle.  Carter decided that they would have to burn the car because their fingerprints were all over the car.  Gray poured charcoal fluid throughout the interior of the car and Carter and Glenn drove on street over to wait for Gray to burn the car.  Gray arrived but stated that the car would not burn. Carter then ordered Glenn to burn the car.

Carter drove Glenn and Gray to a nearby gas station where Glenn filled a twenty-ounce ginger ale bottle with gasoline.  Glenn poured the gasoline and started the fire with his lighter.  Glenn stated that the car caught fire quickly, singeing his hair and eyelashes.  Carter, Gray, and Glenn then went to the home of one of Carter's girlfriends and then to a bar in Akron.  During the drive to Akron, Carter threatened to kill Glenn and his daughter if he said anything.

On November 10, 2004, Glenn was in Cleveland visiting his mother when he ran across Carter and Gray. Carter told Glenn to follow him while he went to Moses' house to pick up the remaining rims.  While in Moses' driveway, Glenn stated he saw a police car drive by.  The group drove away but a high speed chase ensued between the police and Carter in his Ford Taurus and Glen in his white Buick Regal.  The officers were able to stop and apprehend Glenn, while Carter and Gray abandoned the vehicle and got away.  Carter was arrested on November 29, 2004, in Summit County and the FBI fugitive task force arrested Gray on February 7, 2005, in Forest City, Arkansas.

ECF No. 9-2 at 137-42.

## B. **State Conviction**

Carter was charged with two counts of aggravated murder, each with a firearm and a felony murder specification; two counts of aggravated robbery each with a firearm specification; one count of kidnaping with a firearm specification; and one count of arson.  On December 12, 2004, Carter entered pleas of not guilty.

On December 16, 2004, Carter's counsel filed a motion to dismiss Carter's oral statements made to police.  The motion alleged that the police failed to "make him aware" of his

4

( 1:07CV3125)

*Miranda* rights.  The trial court denied Carter's motion.

On December 20, 2005, Carter was convicted on all counts.  The trial court imposed a sentence of life without the possibility of parole for the aggravated murder charge; three years for the merged gun specifications; ten years for the merged aggravated robbery and kidnaping charges; and six months for the arson charge.

### C.  Direct Appeal

On June 30, 2006, Carter's counsel timely filed a notice of appeal and brief in the Eighth Appellate District, Court of Appeals.  Carter raised four assignments of error in his brief.  *See* Appendix A, attached;  ECF No. 9 at 5.  The State responded on August 14, 2006.  On December 18, 2006, the State Court of Appeals affirmed the judgment of the trial court in its entirety.

On February 21, 2007,  Carter filed a notice of appeal to the Supreme Court of Ohio and a motion to file a delayed appeal.  The Supreme Court of Ohio granted appellant's motion.  On May 10, 2007, Carter raised three propositions of law in his memorandum in support.  *See* Appendix B, attached;  ECF No. 9 at 6.  On September 26, 2007, the Supreme Court of Ohio denied leave to appeal and dismissed the case as not involving any substantial constitutional question.

### D.  Federal Habeas Petition

On October 11, 2007, Carter timely filed a petition for writ of habeas corpus challenging his December 20, 2005 conviction alleging three Grounds for Relief.  *See* Appendix C, attached; ECF No.1 at 6, 8 and 9.

5

( 1:07CV3125)

## II.  Law and Analysis

### A.  Standard of Review

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because Carter filed his habeas corpus petition after the effective date of the AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The Antiterrorism and Effective Death Penalty Act of 1996 altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  Before a petitioner's claims can be reviewed on the merits by a federal court, each claim must successfully overcome the procedural barriers of time limitation such as exhaustion, cognizability, and procedural default, then AEDPA governs the Court's review of a habeas corpus petition.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The current deferential standard of review permits the issuance of a writ of habeas corpus if the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-413 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the

6

( 1:07CV3125)

petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable

application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in state
> court.  Under the statute, a federal court may grant a writ of habeas corpus if the
> relevant state-court decision was either (1) "*contrary to* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "*involved an unreasonable application of* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to"

clearly established federal law if it reaches a conclusion opposite to that reached by Supreme

Court holdings on a similar question of law or if it faces a set of facts materially indistinguishable

from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A

decision involves an unreasonable application of federal law only if the deciding court correctly

identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.

*Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct

legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

**B.  Procedural Barriers to Review**

A petitioner must overcome several procedural barriers before a court will review the

merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v.*

*United States*, "Procedural barriers, such as statutes of limitations and rules concerning

procedural default and exhaustion of remedies, operate to limit access to review on the merits of

a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S.

7

( 1:07CV3125)

725, 731 (1993).

### 1.  Jurisdiction

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) & (d).

Carter was convicted in the Cuyahoga County Court of Appeals, Ohio within the

Northern District of Ohio.  Therefore, jurisdiction lies with this Court.

### 2.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) statute of

limitations for filing a petition for a writ of federal habeas corpus is one year, and it begins to run

on the date judgment becomes final.  28 U.S.C. § 2244(d)(1).

The AEDPA statute of limitations is not an issue in this matter.

### 3.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all available state remedies or have no

remaining state remedies available before a federal court will review a petition for a writ of

habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004);

*Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief

remain available, then the petitioner has not exhausted all of his state remedies.  *Rust v. Zent*, 17

8

( 1:07CV3125)

F3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest

court in the state in which petitioner was convicted has been given a full and fair opportunity to

rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

For purposes of this review, Carter's Grounds for Relief are exhausted.

### 4.  **Cognizability**

State prisoners are entitled to federal habeas corpus relief only when they are in custody

due to violations of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).

As such, claims for relief based on violations of state law are not cognizable in a federal habeas

proceeding, *i.e.*, a federal court cannot review claims of state law violations presented in a

petition for habeas corpus relief.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Rulings by the state's highest court on matters of state law are typically binding on

federal courts.  *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  A federal court may not second-

guess a state court's interpretation of its own procedural rules.  *Allen v. Morris*, 845 F.2d 610,

614 (6th Cir. 1988).  Thus, even if a state court errs in applying its own procedural default

statute, the error is not cognizable in federal habeas review.  *Simpson v. Jones*, 238 F.3d 399,

406-07 (6th Cir. 2000).

As explained in detail below, Ground Two is not cognizable under § 2254.

### 5.  **Procedural Default**

Procedural default occurs when a petitioner fails to present his constitutional claims fairly

to the highest state court in a federal constitutional context.  *Anderson*, 459 U.S. 4, 7-8 (1982);

*Picard*, 404 U.S. 270 (1971).  Reasons of federalism and comity generally bar federal habeas

9

( 1:07CV3125)

corpus review of "contentions of federal law . . . not resolved on the merits in the state

proceeding due to respondent's failure to raise them there as required by state procedure."

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause for the default and actual prejudice as a result of
> the alleged violation of federal law, or demonstrate that the failure to consider the
> claims will result in a fundamental miscarriage of justice.

*Coleman v Thompson*, 501 U.S. 722, 750 (1991).

Procedural default is not an issue in this matter.

## C.  Ground Two[1] is Not Cognizable under § 2254

State prisoners are entitled to federal habeas corpus relief only when they are in custody

due to violations of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).

As such, to the extent a petitioner's argument is based upon state law, the petitioner has failed to

state a claim upon which habeas corpus relief may be granted unless the issue concerning an

error in state law is so egregious that petitioner was denied a fundamentally fair trial. *Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  The Supreme

Court of the United States has defined "very narrowly; the category of infractions that violates

'fundamental fairness.'" *Bey v. Bagley,* 500 F.3d 514, 522 (6th Cir. 2007) (quoting *Dowling v.*

*U.S.*, 493 U.S. 342 (1990).

---

[1]  Ground Two states: "Petitioner was denied the equal protection of the law when the
trial court refused to instruct the jury on a lesser included offense, as guaranteed him under the
United States Const." *See also* Appendix C, attached.

10

( 1:07CV3125)

The Supreme Court has "reemphasize[d] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 68. Rulings by the state's highest court on matters of state law are binding on federal courts, and federal courts are also bound by decisions of an intermediate state appellate court unless convinced that the highest state court would decide the issue differently. *Wainwright v. Goode,* 464 U.S. 78, 84 (1983); *Olsen v. McFaul*, 492 F.3d 680, 700 (6th Cir. 2007). For example, even if the state court errs in applying its own procedural default statute to allegedly jurisdictional claims, the error is not cognizable in federal habeas corpus review unless a violation of constitutional right or federal law or treaty results. *Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000).

Carter alleges he was denied his right of equal protection when the trial court refused to instruct the jury on a lesser included offense. Carter believes that the evidence presented was wholly consistent with the lesser offense of manslaughter. Carter claims that, "having found that petitioner was not the principle offender[,] the only other logical conclusion was that petitioner[']s involvement was contrary to the testimony presented at trial and thereby supports petitioner[']s attempt to have the jury consider same." ECF No.1 at 7.

Respondent cited the Sixth Circuit's holding in *Franklin v. Rose* for the proposition that a petitioner's generalized allegation concerning denial of a fair trial tacked on to a state law claim is insufficient to preserve a constitutional claim. *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987). Respondent claims that Carter's allegation of a denial of equal protection "is not the proper constitutional provision for this a claim of this kind," as Carter is challenging the jury

11

( 1:07CV3125)

instructions based upon state law established by the Supreme Court of Ohio in *State v. Kidder*, 32 Ohio.St.3d 279, 285-86 (1987). ECF No. 9 at 9.  Respondent's argument is well taken.

In his pleadings, Carter premises his argument on state law without referencing any violation of the Constitution, laws, or treaties of the United States other than the description of the ground for relief, thus failing to present a claim upon which federal habeas corpus relief may be granted.  When the trial court's alleged error in state law does not rise to a level of constitutional magnitude so egregious as to have denied Carter a fundamentally fair trial, as in Carter's case, a federal habeas court is bound by the State court of appeals' adjudication.

As importantly, the undersigned is not convinced that the State Supreme Court would have decided the matter differently.  This finding is informed by the State court of appeals' citation of Supreme Court of Ohio's case law to bolster the appellate court's analysis.  Unless it overruled its own decision, it is highly likely that the Supreme Court of Ohio would have upheld the ruling of the State court of appeals.  *See State v. Wilkins*, 64 Ohio.St.2d 382, 384 (1980); *State v. Thomas*, 40 Ohio.St.3d 213, 213 (1988).

For these reasons, Ground two is not cognizable under § 2254 and as such, Carter's second Ground  for Relief should be denied.

D. **Grounds One and Three–the State Court of Appeals' Adjudication Was Not Contrary to Nor an Unreasonable Application of Clearly Established Federal Law**

1. **Ground One[2]–Sufficiency of the Evidence**

---

[2]  Ground One states: "Petitioner['][]s  rights as guaranteed him under the United States Constitution [were] denied him when the State failed to present sufficient evidence to sustain the jury[']s verdict."  *See also* Appendix C, attached.

12

( 1:07CV3125)

Carter alleges he was denied his constitutional rights when the State failed to present sufficient evidence to sustain the jury verdict.  Specifically, Carter challenged the sufficiency of evidence that proved he had "purposely, and with prior calculation and design" killed Karamas.

A claim that the evidence was insufficient to convict a petitioner is cognizable under § 2254.  *See Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006).  Because the Due Process clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," a state law question regarding the elements of the crime predicates the enforcement of [petitioner's] federal constitutional right."  *Richey v. Mitchell*, 395 F.3d 660, 672 (6th Cir. 2005);  *Fiore v. White*, 531 U.S. 225, 228-29 (2001).  Sufficient evidence supports a conviction if, after viewing the evidence in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

Carter argues that "the jury[']s verdict in this case clearly reflects that the jury[']s decision was based on insufficient evidence and was merely an attempt to present a finding consistent with the evidence presented which would have demonstrated a lesser included offense that was supported by the evidence."  ECF No. 1 at 7.  He also argues that the fact that the jury did not find Carter to be the "principle offender manifests that the State simply did not present sufficient evidence to support the jury[']s finding that petitioner had in fact committed

13

( 1:07CV3125)

aggravated murder."[3]  ECF No. 1 at 7.

In defense, Respondent cited the test propounded in *Jackson v. Virginia*, and contends that the trial jury correctly rendered a guilty verdict based upon a sufficient amount of evidence.

The State court of appeals relied upon Ohio's standard of review with regard to the sufficiency of evidence found in *State v. Bridgeman*, 55 Ohio.St.2d, 261 (1978).  In *Bridgeman*, the Ohio Supreme Court found that, "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."  ECF No. 9-2 at 145.  Based upon that ruling, the State court of appeals reasoned that *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, 61 Ohio St.3d 259 (*relying upon Jackson v. Virginia*, 443 U.S. 307, 324 (1979).[4]

---

[3]     Under the common-law rule, if a person killed another in doing or attempting to do an act amounting to a felony, the killing was murder.  First-degree murder based on the felony-murder rule does not require proof that the murder was committed willfully, deliberately, and with premeditation, since those elements are presumed to exist if the state proves participation in the underlying felony.  Thus, there is no need to be deemed the principle offender in order to be charged with aggravated murder in a felony murder case; the prosecutor must only prove the defendant was involved in the underlying felony.  Accordingly, any time the commission of a felony causes death, even though unintentional or accidental, the legal malice from the felony is sufficient to transform the killing into murder.  It is only necessary that the defendant intended to commit the underlying felony; no other *mens rea* is required.

40 Am. Jur. 2d Homicide § 65.

[4] "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.  Whether the State could constitutionally make the

14

( 1:07CV3125)

The State court of appeals cited several examples of the sufficiency of the State's evidence to justify the jury's obvious decision that Carter acted purposely.  Such examples include: (1) Carter led the caravan into Cleveland with Karamas (the murder victim) inside the trunk of his own car; (2) Co-defendant Glenn testified that when Carter approached the back of the car, Glenn heard several shots fired into the trunk; (3) Co-defendant Glenn also testified that he saw Carter with a handgun immediately after he heard the gunshots; (4) Carter exclaimed to his co-defendants that he could not believe Karamas was still breathing after he had shot him; (5) Carter told his co-defendants that he had shot Karamas because Karamas knew them; (6) After dumping Karamas' body, Carter led the caravan to Moses' house; (7) Carter told Moses that he had killed the owner of the vehicle; (8) Carter instructed his co-defendants to remove the rims off the car and burn the vehicle to destroy the evidence; and (9) Coroner testified that the gunshots alone could have killed Karamas.  ECF No. 9-1 at 148-49.

The State court of appeals held that, "viewing this evidence in the light most favorable to the prosecution, [we] find that a reasonable trier of fact would be able to conclude that Carter intended to cause the death of the victim, and therefore the State presented sufficient evidence on this element of aggravated murder."  ECF No. 9-1 at 150.

Based upon review of the record, the undersigned, finds that the adjudication of the State court of appeals was not contrary to, nor an unreasonable application of, clearly established federal law.  As such, Carter's first Ground for Relief should be denied.

---

conduct at issue criminal at all is, of course, a distinct question."  *Jackson*, 443 U.S. at 324 n.16. *See* *Papachristou v. Jackson*, 405 U.S. 156 (1972); *Robinson v. California*, 370 U.S. 660 (1962).

( 1:07CV3125)

### 2.  <u>Ground Three[5]–Failure to Suppress Statements and Preserve Evidence</u>

Carter alleges he was denied his right to due process when the trial court denied his

motion to suppress statements he allegedly made without being provided his *Miranda* rights, and

further when the trial court refused to hold the State accountable for destroying possible

exculpatory evidence prior to the start of his trial.  ECF No. 1 at 9.  Respondent contends that

Carter has not shown that the State appellate court's adjudication was contrary to or an

unreasonable application of federal law**.**  ECF No. 9 at 13.

As Carter's third Ground for Relief raises two distinct issues, the Court will address each

separately.

### a.  <u>Motion to Suppress</u>

Carter claims that the trial court erred in denying his motion to suppress a statement that

he allegedly made without evidence that Carter had been provided *Miranda* warnings.  ECF No.

1 at 8.  Respondent counters that Carter was given *Miranda* warnings and placed his initials on a

copy of a document summarizing his statement and checked boxes answering "yes" and "no,"

respectively to the written the questions: "Do you understand the rights stated above?" and "Do

you care to make a written statement?"  ECF No. 9 at 14.  Based upon the presentation of this

evidence at a suppression hearing in conjunction with Carter's testimony that he: (1) provided an

---

[5]  Respondent's brief mistakenly refers to this Ground for Relief as "Ground Four."  ECF
No. 9 at 13.  Despite this mistaken label, Respondent correctly addresses Carter's Third Ground
for Relief.  Ground Three states: "Petitioner[']s due process rights were denied him as guaranteed
by the United States Constitution and the Constitution of Ohio."  *See also* Appendix C, attached.

( 1:07CV3125)

oral statement; (2) drew the line preceding his initials on the written summary of his statement; and (3) was aware of his *Miranda* rights, Respondent maintains that the State court's ruling that Carter knowingly and voluntarily waived his *Miranda* rights comports with federal law.  ECF No. 9 at 14.  Pursuant to *State v. Burnside*, 100 Ohio.St.3d 152, 2003-Ohio-05372,[6] the State court of appeals independently reviewed Carter's claim that the trial court erred when it denied his motion to suppress.  The State court of appeals considered whether the facts in the instant case demonstrated compliance with *Miranda v. Arizona*.  The State Court of Appeals found that there was "competent, credible evidence" to support the trial court's finding that the detectives provided Carter with the warnings required under *Miranda*.  For example, at the suppression hearing Detective Metzler testified that: (1) prior to asking any questions, he advised Carter of his constitutional rights from an advice of rights card; and (2) after hearing his rights, Carter stated that he understood those rights and agreed to speak to the two Detectives.  ECF No. 9-1 at 154-55.  At first, Carter disputed being advised of these rights, but he later admitted that he understood his *Miranda* rights and even asserted those rights when he decided not to make a

---

[6] The Court in *Burnside* found that,

[A]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

ECF No. 9-1 at 154.

( 1:07CV3125)

written statement without counsel.  ECF No. 9-2 at 154-55.

Citing the above evidence, the State Court of Appeals found that "under the totality of the evidence . . . the testimony of Detective Metzler constitutes competent, credible evidence to support the trial court's finding that Carter was read his *Miranda* rights."  ECF No. 9-2 at 155. The State court of appeals further found that, "having been properly advised of his rights, Carter knowingly, intelligently, and voluntarily waived them and willingly provided his oral statement to police."  ECF No. 9-1 at 155.  Consequently, upon independent review, the State court of appeals found that the trial court did not err in denying Carter's motion to suppress.

Upon review of the record, the undersigned finds that the State court of appeals' adjudication was not contrary to, nor an unreasonable application of, clearly established federal law.  As such, the first issue within Carter's Third Ground for Relief should be denied.

### b.  Failure to Preserve Evidence

Carter claims that the State court erred in refusing to hold the prosecution accountable for the destruction of possibly exculpating evidence.  ECF No. 1 at 8.  Respondent acknowledges that the detective took notes during his interrogation of Carter that the detective destroyed *after* the notes were transcribed into a police report.  Respondent contends that the notes the detective disposed of contained no exculpatory information and were not discarded in bad faith.  ECF No. 9 at 15.  Respondent also contends that the discarded notes would not have contained evidence that the police officers read Carter his *Miranda* warnings.  ECF No. 9 at 16.

Upon its review of this issue, the State Court of Appeals cited *Arizona v. Youngblood*, 488 U.S. 51 (1988) as the pertinent case law in determining whether a criminal defendant is

18

( 1:07CV3125)

denied due process of law by the State's failure to preserve evidence. The State court of appeals

explained that the *Youngblood* decision established two tests:

> [O]ne that applies when the evidence is 'materially exculpatory:'and
> one that applies when the evidence is 'potentially useful.' If the state
> fails to preserve evidence that is materially exculpatory, the
> defendant's rights have been violated. *Id*. However, evidence is
> material only if there is a reasonable probability that had the evidence
> been disclosed to the defense, the result of the proceeding would have
> been different. *State v. Schurlock*, 2006-Ohio-4445. To be materially
> exculpatory, 'evidence must both possess an exculpatory value that
> was apparent before the evidence was destroyed, and be of such a
> nature that the defendant would be unable to obtain comparable
> evidence by other reasonably available means.' *State v. Colby*,
> 2004-Ohio-343 (quoting *California v. Trombetta*, 467 U.S. 479
> (1984)).
>
> If on the other hand, the state fails to preserve evidence that is
> potentially useful, the defendant's rights have been violated only
> upon a showing of bad faith. *Shurlock, supra*. The term bad faith
> implies something more than bad judgment or negligence; 'it imports
> a dishonest purpose, moral obliquity, conscious wrongdoing, breach
> of a known duty through some ulterior motive or ill will partaking of
> the nature of fraud. It also embraces actual intent to mislead or
> deceive another.' *State v. Franklin*, 2002-Ohio-2370.

ECF No. 9-1 at 156-57.

In reliance upon this case law, the State court of appeals found that while the evidence in

Detective Metzler's notes was potentially useful and that the Detective's destruction of those

notes was not in bad faith because: (1) Detective Metzler testified that he transferred his

handwritten notes to a typed form and did not deviate from those notes; and (2) Detective

Metzler retained his notes for several weeks before shredding them to make more room for

storage. ECF No. 9-1 at 158. Pursuant to the pertinent test in *Youngblood*, the State court of

appeals found that Detective Metzler's actions did not rise to the level of a violation of Carter's

( 1:07CV3125)

right to due process of law.

Upon its own review of the record, the undersigned finds that the State court of appeals's adjudication was not contrary to, nor did it constitute an unreasonable application of, clearly established federal law as set forth in *Youngblood*. As such, the second issue within Carter's Third Ground for Relief is denied.

### III. <u>Recommendation</u>

In light of all the foregoing, it is recommended that Grounds for Relief One, Two and Three of Jerome Carter's petition for a writ of habeas corpus be denied and the entire matter dismissed in its entirety.

<u>September 27, 2010</u>                    <u>   /s/ Benita Y. Pearson            </u>
Date                                             United States Magistrate Judge

### <u>OBJECTIONS</u>

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

20

( 1:07CV3125)

## Appendix A
## Direct Appeal

1. The trial court erred in denying Appellant's motion for acquittal as to the charges when the State failed to present sufficient evidence to sustain a conviction.

2. Appellant's convictions are against the manifest weight of the evidence.

3. The trial court erred by refusing to instruct the jury on the lesser included offense of involuntary manslaughter which denied Appellant's right to a fair trial.

4. The trial court erred by denying appellant's motion to suppress when there is no evidence that Miranda warnings were given prior to the oral statement and Appellant's federal due process rights under the US Constitution and due process rights under the Ohio Const were violated when the police destroyed the potential exculpatory evidence.

ECF No. 9 at 5.

( 1:07CV3125)

## Appendix B
## Supreme Court of Ohio

1. Appellants [sic] right to a fair trial was denied him as guaranteed him under the U.S. Constitution and the Constitution of this state when the state failed to present sufficient evidence to support its conviction of appellant.

2. Appellants [sic] right to a fair trial as guaranteed him under the U.S. Constitution and the Constitution of this state was denied him when the trial judge abused its discretion by refusing to give or grant appellant's request to charge the jury to a lesser included offense for which he was entitled.

3. Appellants [sic] right to a fair trial w as denied to him as guaranteed him under the United States Constitution and the Constitution of this State when the trial judge denied appellants motion to suppress certain evidence used against him, and refused to hold the state accountable for the destruction of possible exculpatory evidence.

ECF No. 9 at 6.

( 1:07CV3125)

## Appendix C
## Writ of Habeas Corpus Grounds for Relief
## (Reprinted as Submitted by Petitioner)

1. Ground One: Petitioners rights as guaranteed him under the United States Constitution was denied him when the State failed to present sufficient evidence to sustain the jurys verdict.

2. Ground Two: Petitioner was denied the equal protection of the law when the trial court refused to instruct the jury on a lesser included offense, as guaranteed him under the United States Const;

3. Ground Three: Petitioners due process rights were denied him as guaranteed by the United States Constitution and the Constitution of Ohio.

ECF No.1 at 6,8 and 9.